In re HAWLEY DOWN DRAFT FURNACE CO.

Appeal of NATIONAL TRUST & CREDIT CO.

(District Court, E. D. Pennsylvania. June 2, 1914.)

No. 4521.

BANKRUPTCY (§ 228*)—ADMINISTRATION OF ESTATE—REFERENCE—FINDINGS OF REFEREE—REVIEW.

Where a referee's findings were not sufficiently definite to enable the court on a petition to review to determine the legal questions involved, the proceeding would be remanded to the referee for further hearing and additional findings.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 387; Dec. Dig. § 228.*]

In Bankruptcy. In the matter of bankruptcy proceedings of the Hawley Down Draft Furnace Company. On petition of review of a referee's order denying the petition of the National Trust & Credit Company for an order directing the trustee to pay over a specified sum of money collected on accounts of the bankrupt assigned to petitioner. Case remanded to the referee for further findings.

John W. Creekmur, of Chicago, Ill., and Kirkpatrick & Maxwell, of Easton, Pa., for claimant.

E. J. & J. W. Fox, of Easton, Pa., for trustee.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

DICKINSON, District Judge.   At the argument of this cause at bar, it was stated by counsel on both sides that the referee had decided it on the narrow ground that a fact, which could not very well be in serious controversy, had not been formally proven.   It was further stated that the point on which the case was made to turn was one which counsel for the trustee had not made, but was one which had been burnished up by the referee himself.   In a case involving the amount which is involved here, to impale a litigant upon a point as sharp and fine as this would be painful alike to the victim and all beholders of the tragedy.

We have been able to glean enough from the report to acquit the referee of this charge.   He has evidently ruled the case upon no such pin point.   The facts of the case, however, have neither been presented nor found with sufficient definiteness to enable any one, with any degree of satisfaction, to pass upon whatever question may arise out of the real facts.   Some of the facts do appear, but there is an indefiniteness and elusiveness about the presentation of others which makes the case unnecessarily cloudy and shadowy.   A sketch outline of the facts would seem to be this:

The bankrupt had customers with whom it ran accounts.   It was in need of money.   The National Trust & Credit Company agreed to finance the bankrupt from time to time by buying its outstanding accounts receivable at a discount, paying therefor a certain percentage of the face amount in cash, and the balance when the account was paid by the debtor.   The accounts so bought were agreed to be assigned to the purchaser, for whom thereafter the bankrupt was to act as a collecting agent and was responsible to the purchaser for the return of "its own with usury."   All collections as made were to be handed over in the original package.   The bankrupt collected a number of accounts, covering, in their aggregate amount, the sum here claimed.   These moneys were not sent to the Trust Company, but were deposited by the bankrupt in bank to its credit, and were turned over to the receiver appointed by the state court of Northampton county, Pa., and by him in turn handed on to the trustee in bankruptcy.   The Trust Company claims to have been the owner of these accounts receivable, and asks that the trustee in bankruptcy be directed to turn over the moneys, representing in part these accounts, to the petitioner as its property, and as no part of the assets of the bankrupt estate.

These are about all the facts of which we may be sure.   The mind which looks them over returns from the survey with very much the feelings of Noah's dove.   There is no place upon which to plant your feet.   Both of these corporations recite themselves to be Ohio corporations.   Further than this we are without information, and the fact referred to may be of no importance.   We have no evidence beyond the recital in the paper of the place of the contract.   This may be of importance, although here again presumption may supply the place of findings.   This preliminary contract sufficiently appears, as apparently it was agreed that the paper submitted was a copy of an original contract duly executed and delivered.

At this stage, we do not feel called upon to state our views of what this contract is in its legal effect, nor to comment upon it further than to suggest that it may become important to know whether it is bona fide an agreement to purchase at a price, or whether it is a more or less thinly disguised attempt to give a loan or advancement on usurious terms the form of an agreement of purchase. There is manifestly a clear-cut and important difference between an agreement by the bankrupt to sell and assign and an actual sale and assignment by it. We ought to have a specific finding as to this, in order that we may know whether there was such a sale, and, if so, when and where and how it was made, and the consideration, if any, given, and what, if any, delivery accompanied it, and whether the sale was made by mere oral declarations of transfer or by a writing, and, if the latter, a copy. Some facts bearing upon the existence of a written assignment are given us, but nothing fully or definitely. We are given the negative fact that none of the debtors were notified of any assignment, nor were any of them informed of it. We are informed of the valueless fact that when the bankrupt assigned any accounts the assignment took the double form of a sweeping draft on a number of listed debtors, accompanied with copies of the accounts in the form of bills, coupled with a formal assignment of the accounts so listed. We are given no specific finding, however, of whether any of the accounts with which we are now concerned were in fact in form so assigned, or, if there is such an assignment what, if anything, there was in the nature of a delivery of the property assigned, and whether these assigned accounts were collected and the proceeds of the collection are now in the hands of the trustee. We do not feel called upon to brief up either the case of the claimant or the defense of the trustee, and the information we have as to the facts is too meager to enable us to do so.

We therefore content ourselves with referring the case back to the referee, with instructions to grant a rehearing and to give leave to every party in interest to submit new or additional evidence, and offer fresh or additional testimony relevant to the questions which have been raised or which may arise in the cause, and to report back his findings thereon to this court.